## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

---

CNY FAIR HOUSING, INC.,

        Plaintiff,

   v.

HOME SWEET HOME AT ATHENS;
HOME SWEET HOME ON THE HUDSON;
THE W MANAGEMENT GROUP, LLC;
W GROUP MANAGEMENT SERVICES, LLC

        Defendants.

---

**Case No.**
5:22-cv-01163 (BKS/ML)

**COMPLAINT**

**BENCH TRIAL DEMANDED**

Plaintiff CNY Fair Housing Center, Inc. ("Plaintiff"), by and through its undersigned counsel, EISENBERG & BAUM, LLP, for its Complaint against Defendants Home Sweet Home At Athens; Home Sweet Home On The Hudson; The W Management Group, LLC; and W Group Management Services, LLC ("Defendants") alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff is CNY Fair Housing, Inc. ("CNY Fair Housing"), a non-profit organization committed to ensuring that all people, including deaf individuals, have equal access to housing in Central and Northern New York.

2. At all times relevant to this action Defendants owned, controlled, operated, and/or managed two assisted living facilities in Central and Northern New York. Defendants discriminated against both current and prospective deaf residents by refusing to provide auxiliary aids and services necessary for effective communication and equal access to Defendants' services.

3. American Sign Language ("ASL") is a visual, three-dimensional, non-linear language, and its grammar and syntax differ from the grammar and syntax of English and other spoken languages. ASL is best thought of as a foreign language used by American deaf people, with its own grammar

1

and syntax. Deaf individuals are often educated in Deaf schools and grow up in culturally Deaf environments. As a result of both physical and environmental factors, deaf individuals frequently have great difficulty achieving command of spoken or written English. From a pedagogical standpoint, for example, it is difficult to understand how English works if a person has never heard it. However, deaf individuals are often able to communicate with great complexity in ASL.

4. Accordingly, in assisted living facilities, writing is not an effective means for deaf persons to communicate complex information such as assessments, planning, intake, screening, medical care, recreation, therapy, meetings, and various legal documentation.

5. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said.

6. For these reasons, ASL interpreters are necessary for the great majority of deaf individuals receiving treatment in assisted living facilities when that care involves complicated information, lengthy communications, or when the individual has other conditions that make treatment or communicating through other means more difficult.

7. CNY Fair Housing used Fair Housing testers ("Testers") to determine whether Defendant's assisted living facilities would supply an ASL interpreter for a deaf resident if requested or necessary. These Testers posed as relatives of deaf persons who were interested in utilizing Defendant's services and programs. When the Testers inquired whether the facilities would provide interpreters for their deaf relatives, they were told that the facilities would not interpreters and do not offer ASL interpretation services.

8. In the context of assisted living facilities, the outright refusal to provide an ASL interpreter will result in ineffective communication for deaf residents. Defendant thus discriminated against current and prospective deaf residents by failing and/or refusing to provide qualified ASL interpreters or other auxiliary aids and services to ensure effective communication.

9. Plaintiff brings this lawsuit to compel Defendant to cease its unlawful discriminatory practices. Plaintiff seeks declaratory relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful disability discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602, *et seq*.

## THE PARTIES

10. Plaintiff, CNY FAIR HOUSING, INC., is a private non-profit corporation organized under the laws of New York and registered to do business in New York. Its principal place of business is located in Syracuse, New York. CNY Fair Housing's mission is to ensure fair housing opportunity for all people in Central and Northern New York. Through education, research, advocacy, and enforcement, CNY Fair Housing works to eliminate housing discrimination and promote the creation of open, accessible, and inclusive communities that are diverse in race, gender, and disability.

11. CNY Fair Housing uses "Testers" who pose as prospective renters, home buyers, residents, and the like for the purpose of obtaining information about the conduct of local governments, landlords, real estate agents, companies, and others to determine if housing discrimination is taking place.

12. CNY Fair Housing expended staff time and other resources to investigate and respond to Defendant's discriminatory practices, which diverted resources away from CNY Fair Housing's other activities.

13. Defendants' discriminatory rental practices frustrated CNY Fair Housing's mission to ensure that all people have equal access to housing opportunities by, among other things, making assisted living facilities inaccessible to individuals with disabilities.

14. Defendant Home Sweet Home At Athens is a senior living facility located at 71 2nd Street, Athens, NY 12015. Defendant is subject to the requirements of the FHA.

15. Defendant Home Sweet Home On The Hudson is a senior living facility located at 38 Prospect Ave Catskill, NY 12414. Defendant is subject to the requirements of the FHA.

16. Defendants The W Management Group, LLC and W Group Management Services, LLC are registered to do business in New York with a principal place of business at 2357 60th Street, Brooklyn, NY, 11204. Defendants The W Management Group, LLC and W Group Management Services, LLC are subject to the requirements of the FHA. Upon information and belief, Defendants The W Management Group, LLC and W Group Management Services, LLC are parent entities that own, oversee, manage, license, control, and/or operate Defendants Home Sweet Home At Athens and Home Sweet Home On The Hudson.

## JURISDICTION & VENUE

17. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendant resides within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the Defendant has sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

### CNY Fair Housing's Testing Methods

19. CNY Fair Housing's testing investigation against Defendants involved Testers making telephone calls to Defendants' facilities. Testers, operating under aliases, made inquiries purportedly on behalf of fictional deaf relative(s). Testers gathered preliminary information about Defendants' services and inquired specifically about the availability of auxiliary aids and services, including onsite ASL interpreters, for their deaf relative(s).

20. Audio recordings were made of all contacts between Testers and agents of Defendants

**Factual Allegations Regarding Home Sweet Home At Athens**

Test #1

21. On June 30, 2021, Tester P.H., under an alias, called Home Sweet Home At Athens and spoke with a nurse on staff named "Cathy." Tester told Cathy that he is looking for a place for his deaf father and inquired whether the facility provides an ASL interpretation. Cathy stated that the facility does not have such services. Cathy also expressed concern that the current fire alarm system at the facility did not have strobe lights, which would allow a deaf person to see.

Test #2

22. On August 26, 2021, Tester P.H., under an alias, called Home Sweet Home At Athens and spoke with the Acting Administrator named "Kristin." Tester asked whether the facility can provide ASL interpretation for important events like legal documents, medical, or recreational activities. Kristin responded that the facility cannot provide such services. Kristin advised Tester to look into insurance companies. After further communication, Kristin told Tester that she would get back to him after further research.

23. Not having heard back from Kristin, Tester P.H. called Home Sweet Home At Athens again on September 30, 2021, and spoke with "Kristin." Tester asked again whether the facility would be willing to accommodate the deaf father for important events like when he has to sign legal or

medical documents. Kristin confirmed that the facility does not do that and that she does not even know anybody that does that.

### Factual Allegations Regarding Home Sweet Home On The Hudson

24. On June 11, 2021, Tester K.C., under an alias, called Home Sweet Home On The Hudson and spoke with an employee named "Susan." Tester asked whether the facility provides ASL interpretation services for her deaf uncle. Susan responded that the facility does not provide ASL interpretation. Susan further stated that the facility is not set up for having lights on for when the alarms go off.

### Factual Allegations regarding The W Group; The W Management Group, LLC; and W Group Management Services, LLC

25. Upon information and belief, at all times relevant to this action, Defendants The W Group; The W Management Group, LLC; and/or W Group Management Services, LLC ("Parent Entities") were parent entities that owned, oversaw, managed, licensed, controlled, and/or operated Defendants Home Sweet Home At Athens and Home Sweet Home On The Hudson

26. Upon information and belief, Parent Entities had significant control of the operations of Defendants Home Sweet Home At Athens and Home Sweet Home On The Hudson, including but not limited to implementing policies and procedures regarding accommodations for persons with disabilities and related employee training.

27. Upon information and belief, Parent Entities failed to implement policies and procedures regarding reasonable accommodations for deaf individuals at their senior living facilities, including Defendants Home Sweet Home At Athens and Home Sweet Home On The Hudson.

28. Upon information and belief, Parent Entities failed to adequately train their employees on how to reasonably accommodate deaf individuals receiving services at their senior living facilities, including Defendants Home Sweet Home At Athens and Home Sweet Home On The Hudson.

29. As a result, Parent Entities failed to ensure that their senior living facilities, including Defendants Home Sweet Home At Athens and Home Sweet Home On The Hudson, were in compliance with federal antidiscrimination laws.

## COUNT I: VIOLATIONS OF THE FAIR HOUSING ACT

30. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

31. This action is brought to enforce of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, *et seq*.

32. At all times relevant to this action, Defendants owned, controlled, operated and/or leased dwellings within the meaning of U.S.C. § 3602(b), which includes "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."

33. The FHA provides that it is illegal "to discriminate against any person in the terms, conditions, privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling," because of disability. 42 U.S.C. § 3604(f)(2).

34. Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

35. Under the FHA, it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

36. As described above, Defendants violated the FHA by, inter alia, refusing Plaintiff's Testers' reasonable accommodation request of a qualified ASL interpreter for their deaf family

members that would allow equal access and opportunity to use and enjoy Defendants' dwelling and services, which equally situated hearing residents are able to enjoy.

37. Plaintiff is an aggrieved person within the meaning of 42 U.S.C. § 3602(i), has been injured as a result of Defendants' discriminatory conduct, and has suffered damages, including diversion of resources and frustration of mission.

38. Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs pursuant to the FHA, 42 U.S.C. § 3613(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have discriminated in violation of the FHA.

b. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

c. Order Defendants:

   i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination of failing to provide effective communication against deaf or hard of hearing individuals;

   ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

  iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

  iv. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances;

  v. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

  vi. to train all their employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the FHA.

  vii. to train all their employees, staff, and other agents on a regular basis about Defendants' policy regarding how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals; and

  viii. to implement a program of testing Defendants' employees, staff, and other agents to determine whether they are complying with the requirements of the FHA.

d. Award to Plaintiff:

  i. Compensatory damages pursuant to the FHA;

  ii. Punitive damages pursuant to the FHA;

  iii. Reasonable costs and attorneys' fees pursuant to the FHA,

    iv.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    v.    Any and all other relief, including nominal damages, that this Court finds necessary and appropriate.

Dated: November 7, 2022

Respectfully submitted,

By:

*[signature]*

Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, NY 10003
Main: (212) 353-8700
Fax: (917) 591-2875
Email: arozynski@eandblaw.com